RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

WINERIES OF THE OLD MISSION PENINSULA ASSOCIATION; BOWERS HARBOR VINEYARD & WINERY, INC; BRYS WINERY, LC; CHATEAU GRAND TRAVERSE, LTD.; GRAPE HARBOR INC.; MONTAGUE DEVELOPMENT, LLC; OV THE FARM LLC; TABONE VINEYARDS, LLC; TWO LADS, LLC; VILLA MARI, LLC; WINERY AT BLACK STAR FARMS LLC; CHATEAU OPERATIONS, LTD,

        *Plaintiffs-Appellees*,

    *v.*

TOWNSHIP OF PENINSULA, MICHIGAN,

        *Defendant*,

PROTECT THE PENINSULA, INC.,

        *Movant-Appellant*.

No. 21-1744

―――――――――――

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cv-01008—Paul Lewis Maloney, District Judge.

Argued: June 9, 2022

Decided and Filed: July 27, 2022

Before: MOORE, STRANCH, and LARSEN, Circuit Judges.

―――――――――――

## COUNSEL

**ARGUED:** Tracy J. Andrews, LAW OFFICE OF TRACY JANE ANDREWS, PLLC, Traverse City, Michigan, for Appellant. Joseph M. Infante, MILLER, CANFIELD, PADDOCK AND STONE, PLC, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Tracy J. Andrews, LAW OFFICE OF TRACY JANE ANDREWS, PLLC, Traverse City, Michigan, for Appellant.

Joseph M. Infante, Stephen M. Ragatzki, MILLER, CANFIELD, PADDOCK AND STONE, PLC, Grand Rapids, Michigan, for Appellees.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  After the plaintiffs, a group of wineries and an association representing their interests (collectively, the "Wineries"), sued a Michigan municipality over several zoning ordinances that regulate vineyards, a local advocacy group, Protect the Peninsula, Inc. ("Protect the Peninsula"), moved to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2).  The district court denied this motion.  Because Protect the Peninsula satisfied Rule 24(a)(2)'s requirements, we **REVERSE** and **REMAND**.

## I.  BACKGROUND

Located in Michigan's Grand Traverse County, Peninsula Township (the "Township") is aptly named.  The approximately twenty-mile-long municipality occupies Old Mission Peninsula, a landmass that juts north out into, and is surrounded on three sides by, Lake Michigan.  R. 41-4 (Jacobs Aff. ¶ 4) (Page ID #2091).  The Township is between one to three miles wide at various points with a narrow land bridge connecting it to the mainland.  *Id.*  Access to the Township is limited due to this geography.  For car-bound travelers, a sole primary road provides the means of ingress and egress.  *Id.*  Traffic tends to concentrate on this road as a result.  R. 41-2 (Nadolski Aff. ¶ 30) (Page ID #2074).  Overall, the Township is marked by farmland and residential communities with approximately 5,800 people residing in these communities.  R. 41-4 (Jacobs Aff. ¶¶ 5–6) (Page ID #2091); R. 169 (Mot. for Stay at 1) (Page ID #6225).

The Wineries also inhabit Old Mission Peninsula, and the Township has adopted zoning ordinances that regulate the vineyards' activities.  R. 29 (Amd. Compl. ¶¶ 14–25) (Page ID #1088–90); R. 35 (Answer ¶ 28) (Page ID #1885).  Notable for this appeal, § 6.7.2(19) of the Peninsula Township Zoning Ordinances provides that a winery with at least forty acres may host a tasting room, but only with limited retail sales, R. 29-1 (Zoning Ordinances at 42, 44) (Page ID

#1183, 1185), and prohibits the hosting of "weddings, receptions, and other social functions for hire" at these venues. *Id*. at 42 (Page ID #1183). Section 8.7.3(10) of the zoning ordinances allows a winery situated on at least fifty acres to host a tasting room, maintain limited guest rooms and residences, and provide other guest activities by special permit, *id.* at 127, 130–32 (Page ID #1268, 1271–73), with the intent that such a facility "maintain the agricultural environment, be harmonious with the character of the surrounding land and uses, and . . . not create undue traffic congestion, noise, or other conflict with the surrounding properties." *Id.* at 127 (Page ID #1268). Section 8.7.3(12) meanwhile provides that a winery may, by special permit, sell limited amounts of wine produced at one location at the tasting room of another location. *Id.* at 137–38 (Page ID #1278–79).

Aware that some of its zoning ordinances were unpopular with the Wineries, the Township attempted to negotiate changes. R. 24 (Resp. at 4–6, 16–18) (Page ID #948–50, 960–62). When these negotiations stalled, the Wineries initiated this lawsuit against the Township, claiming that the zoning ordinances were both unconstitutional on various grounds and violated state laws, including being preempted under the Michigan Liquor Control Code, Mich. Comp. Laws § 436.110, *et seq*. R. 29 (Amd. Compl. at 31–42) (Page ID #1116–27). As relief, the Wineries requested that the district court enjoin the Township preliminarily and permanently from enforcing the ordinances. *Id*. ¶ 307 (Page ID #1128). The Wineries also sought monetary damages. *Id.* The Wineries subsequently moved for partial summary judgment on their state-law preemption claim, and the Township moved for summary judgment on all the Wineries' claims. R. 53 (Wineries' Mot. for Summ. J.) (Page ID #2270–71); R. 54 (Wineries' Br. in Supp. of Mot. for Summ. J.) (Page ID #2272–2303); R. 142 (Township's Mot. for Summ. J.) (Page ID #4961–5004).

Relations between the Wineries and the Township soured further during these proceedings. The parties reached a tentative agreement to settle the case before the Township backed out of the agreement. R. 127 (12/07/21 Dist. Ct. Order at 1) (Page ID #4389). This led the Wineries to move for sanctions and attorney fees against the Township. *Id.* After holding a hearing, the district court granted these requests. *Id*. at 2 (Page ID #4390); R. 139 (01/05/22 Dist. Ct. Order at 9) (Page ID #4958). Despite this inauspicious start, settlement talks have

continued throughout the litigation.  *See* R. 154 (04/11/22 Minutes) (Page ID #5854); R. 180 (07/05/22 Minutes) (Page ID #6804).

None of these maneuvers escaped the attention of another resident of Old Mission Peninsula:  the equally well-named proposed intervenor, Protect the Peninsula.  Protect the Peninsula describes itself as a "watchdog" that monitors the Township's "policies[] and decisions related to land use inconsistent with the community's agricultural and residential character."  R. 41 (Br. in Supp. of Mot. to Intervene at 10) (Page ID #1976).  Protect the Peninsula has intervened in previous lawsuits involving the Wineries and the Township's zoning ordinances and has organized referenda and negotiations to defend or modify ordinances.  R. 41-2 (Nadolski Aff. ¶¶ 20–21) (Page ID #2070–71).  The organization represents various property owners who reside in the Township.  *Id.* ¶¶ 1, 5–6 (Page ID #2068); R 41-3 (Wunsch Aff. ¶¶ 1–2, 58) (Page ID #2078, 2087); R. 41-4 (Jacobs Aff. ¶¶ 1–2, 14–15) (Page ID #2091, 2093); R 41-5 (Phillips Aff. ¶¶ 1, 5) (Page ID #2096, 2097); R. 41-6 (Zebell Aff. ¶¶ 1–2, 4) (Page ID #2102, 2103).

Soon after the Wineries initiated this lawsuit, Protect the Peninsula moved to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2).  R. 40 (Mot. to Intervene) (Page ID #1965–66).  After the Wineries moved for partial summary judgment on their state-law-preemption claim, Protect the Peninsula moved to supplement its motion to intervene and argued that the Wineries' state-law claims should be dismissed for lack of supplemental jurisdiction.  R. 56 (Mot. to Supp.) (Page ID #2553–66); R. 56-1 (Mot. to Dismiss) (Page ID #2567–2627).  Neither the Wineries nor the Township had disputed that the district court could exercise supplemental jurisdiction over these claims.  R. 37 (Rule 26(f) Report at 1) (Page ID #1959).

The Wineries did, however, contest Protect the Peninsula's motion to intervene and its motion to supplement.  R. 59 (Mot. to Strike) (Page ID #2719–20); R. 60 (Br. in Supp. of Mot. to Strike) (Page ID #2721–32).  The Township did not oppose Protect the Peninsula's motion to intervene.  R. 47 (Joinder & Concurrence) (Page ID #2150–56).  Ultimately, the district court denied both of Protect the Peninsula's motions.  R. 108 (10/21/21 Dist. Ct. Order) (Page ID #4167–75).  Protect the Peninsula timely appealed.  R. 121 (Notice of Appeal) (Page ID #4343).

While this appeal was pending, the district court ruled on the Wineries' motion for partial summary judgment and on the Township's motion for summary judgment. The district court found that parts of §§ 6.7.2(19), 8.7.3(10), and 8.7.3(12) of the zoning ordinances were either preempted by state law or unconstitutional. R. 162 (06/03/22 Dist. Ct. Opinion & Order at 13, 21, 28, 34, 36, 39, 41) (Page ID #5993, 6001, 6008, 6014, 6016, 6019, 6021). The district court enjoined the Township from enforcing these aspects of the zoning ordinances. *Id*. at 49 (Page ID #6029). The district court denied the Township's motion for summary judgment. *Id*. at 50 (Page ID #6030).

## II.  ANALYSIS

Under Federal Rule of Civil Procedure 24(a)(2), district courts must permit anyone to intervene who, (1) in a timely motion, shows that (2) they have a substantial legal interest in the case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties. *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005). Our standard of review depends on which of these four elements we are reviewing. "Except as to issues of timeliness, which are not presented here, this Court's review of a district court's denial of a motion to intervene under Rule 24(a) of the Federal Rules of Civil Procedure is *de novo*." *Id.* at 315 (footnote omitted).[1] Because the district court ruled that Protect the Peninsula failed to satisfy the substantial-legal-interest, impairment, and adequate-representation requirements, we focus on those elements, reviewing each *de novo*.

## A.  Substantial Legal Interest

At the outset, Protect the Peninsula "must show that [it has] a substantial interest in the subject matter of this litigation." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999). We hold that the property interests of Protect the Peninsula's members satisfy this requirement.

---

[1]The Wineries also argue that "prudence strongly suggests that intervention be denied at this late stage." Appellees' Br. at 32. Because the Wineries did not dispute the timeliness of Protect the Peninsula's motion to intervene below, *see* R. 108 (10/21/21 Dist. Ct. Order at 3) (Page ID #4169), they have forfeited this issue and we decline to address it. *See Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. L. Off. of Michael A. DeMayo, LLP*, 21 F.4th 350, 355 (6th Cir. 2021).

What counts as a "substantial interest" depends on countervailing considerations. On the one hand, we have adopted "a rather expansive notion of the interest sufficient to invoke intervention of right." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). Our caselaw, for example, instructs that proposed intervenors need not have "a specific legal or equitable interest" in the litigation for the interest to qualify as substantial. *Id.* (quoting *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)). Expansive, on the other hand, "does not mean that any articulated interest will do." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007). Instead, "[t]he interest must be significantly protectable" to rise to the level of substantial. *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989) (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). These competing concerns mean that "the substantiality of the claimed interest is necessarily fact-specific." *Mich. State AFL-CIO*, 103 F.3d at 1245.

The facts underlying this case invoke the kind of interest that the law has long deemed to be substantial. "Interests in property are the most elementary type of right that Rule 24(a) is designed to protect." *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977) (quoting *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)). Although the most straightforward iteration of this principle in our cases has been when a proposed intervenor's property is directly affected by a lawsuit like an action that would condemn their land, *see United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993), we have held that indirect impacts on property interests can suffice. Notably, in *Joseph Skillken & Co. v. City of Toledo*, 528 F.2d 867, 873–75 (6th Cir. 1975), *vacated on other grounds*, 429 U.S. 1068 (1977), we held that when a district court ordered Toledo to rezone an area by spot zoning, property owners in the city who had bought and developed their properties in reliance on the existent zoning ordinances had a substantial enough interest to intervene under Rule 24(a).[2] That case guides us to our conclusion here.

---

[2]*Joseph Skillken & Co.* also held that the district court exceeded its authority when it ordered Toledo's city council to pass new zoning ordinances in responses to allegations that the current ordinances were racially discriminatory. 528 F.2d at 878. It was this part of the opinion that the Supreme Court vacated after *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), and *Hills v. Gautreaux*, 425 U.S. 284 (1976). *See Joseph Skilken & Co. v. City of Toledo*, 558 F.2d 350, 350–51 (6th Cir. 1977) (adhering to previous decision).

Protect the Peninsula has offered affidavits of its members that attest to the various ways in which those members' property interests could be affected by the Wineries' litigation. Members who own property near the Wineries fear that their property values will diminish because of the increased commercial activity that could follow from the zoning ordinances being struck down. R. 41-2 (Nadolski Aff. ¶¶ 32–33) (Page ID #2074–75); R. 41-4 (Jacobs Aff. ¶¶ 6, 17–18) (Page ID #2091, 2094); R 41-5 (Phillips Aff. ¶ 18) (Page ID #2099); R. 41-6 (Zebell Aff. ¶ 13) (Page ID #2104–05). Members also attest that they purchased their properties in partial reliance on these ordinances, R. 41-2 (Nadolski Aff. ¶ 34) (Page ID #2075); R. 41-4 (Jacobs Aff. ¶ 8) (Page ID #2092), and that the quiet enjoyment of their property will diminish if the Wineries win their lawsuit, R. 41-6 (Zebell Aff. ¶¶ 8–9) (Page ID #2103–04). In a similar vein, members worry that striking down the ordinances would result in additional traffic to the Wineries, which, given the one primary road onto the peninsula, would impair driving to their properties, R. 41-2 (Nadolski Aff. ¶ 30) (Page ID #2074); R. 41-4 (Jacobs Aff. ¶¶ 4, 18) (Page ID #2091, 2094); R 41-5 (Phillips Aff. ¶¶ 12, 16) (Page ID #2098–99), and harm one of their farming businesses by causing transportation costs to rise, R 41-3 (Wunsch Aff. ¶¶ 55–58) (Page ID #2086–87).

These concerns identify more than just possible annoyances. Violations of a zoning ordinance can give rise to a nuisance per se claim under Michigan Compiled Laws § 125.3407. To abate the nuisance, Michigan courts provide for injunctive relief for claims brought under this statute. *See Township of Fraser v. Haney*, No. 160991, 2022 WL 388013, at *3–4 (Mich. Feb. 8, 2022), *reh'g denied*, 971 N.W.2d 214 (Mich. 2022). Maintaining such an action requires that the plaintiffs demonstrate standing, *Towne v. Harr*, 460 N.W.2d 596, 598 (Mich. Ct. App. 1990), but this can be done "by showing that the 'defendant's activities directly affected the plaintiff[s'] recreational, aesthetic, or economic interests'" like those identified by Protect the Peninsula's members, *Kallman v. Sunseekers Prop. Owners Ass'n, L.L.C.*, 745 N.W.2d 122, 122 (Mich. 2008) (quoting *Mich. Citizens for Water Conservation v. Nestlé Waters N. Am. Inc.*, 737 N.W.2d 447, 455 (Mich. 2007)).

Consequently, should the Wineries simply violate the zoning ordinances, some of Protect the Peninsula's members might be able seek injunctive relief under Michigan law absent the Township's willingness to enforce its own laws. That is, these members might be able to do so *if*

the ordinances survive this litigation.  That the ordinances might not survive is sufficient for Protect the Peninsula to satisfy the substantial-interest requirement of Rule 24(a).  *Cf. Joseph Skillken & Co.*, 528 F.2d at 874 (allowing intervention where a statute granted certain property owners right to seek injunctive relief "to prevent not only a violation but also a threatened violation" of zoning ordinances).  Simply put, "[t]his litigation, which will establish the validity or invalidity of the [zoning] ordinance[s], necessarily bears directly on the property interests [Protect the Peninsula's members] seek to preserve." *Planned Parenthood of Minn., Inc.*, 558 F.2d at 869.

Much of the Wineries' argument to the contrary focuses on the fact that Protect the Peninsula is an advocacy group.  This is a red herring.  Although we have repeatedly denied intervention as of right to advocacy groups who have "only a general ideological interest in the lawsuit," *Coal. to Defend Affirmative Action*, 501 F.3d at 782, Protect the Peninsula has offered more than just its "advocacy" in getting the zoning ordinances enacted as support for its motion to intervene, *Providence Baptist Church*, 425 F.3d at 317.  As we have already detailed, it has also offered affidavits of its members whose property interests are implicated by the lawsuit.

Those interests make Protect the Peninsula's interest in this litigation weightier than, for example, those of an advocacy group that merely favors defending a state constitutional amendment barring public affirmative-action programs, *Coal. to Defend Affirmative Action*, 501 F.3d at 780–84, opposes legal challenges to a state's regulation of abortion practices, *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 344–45 (6th Cir. 2007), or seeks to block a settlement between a city and church concerning the constitutionality of zoning ordinances the enactment of which the group had supported, *Providence Baptist Church*, 425 F.3d at 316–17.  Indeed, that additional heft is sufficient to count as a substantial interest, rendering the Wineries' citations to *Coalition to Defend Affirmative Action*, *Northland Family Planning Clinic, Inc.*, and *Providence Baptist Church* inapposite.

## B.  Impairment

Next is the issue of impairment.  "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if

intervention is denied." *Grutter*, 188 F.3d at 399 (quoting *Mich. State AFL-CIO*, 103 F.3d at 1247). Keeping with the general theme of Rule 24(a), "[t]his burden is minimal." *Id*. (quoting *Mich. State AFL-CIO*, 103 F.3d at 1247). "The rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1908.2 (3d ed. April 2022 Update).

Protect the Peninsula has carried its burden on this element, too. "This court has already acknowledged that potential stare decisis effects can be a sufficient basis for finding an impairment of interest." *Mich. State AFL-CIO*, 103 F.3d at 1247 (citing *Linton ex rel. Arnold v. Comm'r of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir. 1992)). "It seems clear that a judgment which declares a zoning order to be void would bind adjoining property owners to the extent of taking away their statutory right to an independent action based on the order." *Joseph Skillken & Co.*, 528 F.2d at 875 (quoting *Wolpe v. Poretsky*, 144 F.2d 505, 507 (D.C. Cir. 1944)). By enjoining some of the zoning ordinances as either unconstitutional or preempted by state law, the district court has already limited the abilities of Protect the Peninsula's members to protect their property interests through nuisance per se claims against the vineyards. For these reasons, Protect the Peninsula has satisfied the "minimal requirements of the impairment element." *Grutter*, 188 F.3d at 400.

## C. Adequate Representation

Finally, there is the issue of whether the Township would inadequately represent Protect the Peninsula's interests. When, as here, the proposed intervenor and party to the suit currently share the "same ultimate objective" (e.g., defending the zoning ordinances), a presumption of adequate representation arises. *United States v. Michigan*, 424 F.3d 438, 443–44 (6th Cir. 2005). That presumption may be overcome by showing, inter alia, that the party has "interests adverse to the intervener." *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000); *see also Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227–28 (6th Cir. 1984). In assessing whether a proposed intervenor has fulfilled this requirement, courts must remember that certainty about future events is not required. Instead, "Rule [24(a)] is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making

that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also Grutter*, 188 F.3d at 400–01.

Protect the Peninsula argues that there is "ample basis" to believe that it and the Township are animated by different, and possibly conflicting, concerns. Appellant's Br. at 55. First, although the Township has an interest in defending the ordinances, it also presumably has another interest: protecting the fisc. Because the Township faces the possibility of monetary damages in this lawsuit, it could decide to settle if the terms turn to its liking, and it has continued to engage in settlement talks. *See, e.g.*, R. 180 (07/05/22 Minutes) (Page ID #5854). Conversely, Protect the Peninsula is not subject to money damages. Protect the Peninsula is also more selective in its membership. Unlike the Township—which represents everyone who resides on Old Mission Peninsula, including the Wineries—Protect the Peninsula is comprised of members who are focused on the effects that this litigation will have on their properties. *See, e.g.*, R. 41-2 (Nadolski Aff.) (Page ID #2066–76). Whatever else they may think about the state of public finances, these members are primarily concerned with safeguarding their land values, ensuring the quiet enjoyment of their homes, and preserving the viability of their farms. Combined, concludes Protect the Peninsula, these differences show that the Township lacks the same drive that motivates Protect the Peninsula to focus solely on defending the zoning ordinances.[3]

But we need not take Protect the Peninsula's word for it. In notifying the district court that it did not oppose Protect the Peninsula's motion to intervene, the Township lingered on its ability to represent the interests of Protect the Peninsula and its members. The Township was frank. Defending its ability to "represent the citizenry at large and its interests on a macro level," the Township readily conceded that it was limited in how much it could do to represent the interest of individual citizens implicated by this lawsuit, such as the interest in maintaining the value of certain properties. R. 47 (Joinder & Concurrence at 3) (Page ID #2153). As the Township explained, it was "not legally permitted or able to represent those specific interests on the micro level to the extent that [Protect the Peninsula] is able to do so." *Id.* at 3–4 (Page ID

---

[3]Contrary to the Wineries' argument otherwise, Protect the Peninsula's motion to intervene demonstrates that the interests discussed here were preserved. R. 41 (Mot. to Intervene at 15–16) (Page ID #1981–82).

#2153–54).  Instead, "although there may be *some* overlapping interests between [Protect the Peninsula] and the Township, the Township is not necessarily able to represent the specific interest of [Protect the Peninsula] in this lawsuit and intervention by right is appropriate."  *Id.* at 4 (Page ID #2154).

In other words, the Township admitted that it does "not have the same interest in protecting the values of the homeowners' properties as do the homeowners themselves."  *Joseph Skillken & Co.*, 528 F.2d at 876.  Numerous cases from other circuits dealing with the interest of governmental entities in similar contexts underscore the significance of the Township's concession.  *See, e.g.*, *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (per curiam); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991).  We see no reason to second guess that concession.  Protect the Peninsula has satisfied the inadequate-representation requirement of Rule 24(a).

The Wineries try to evade this conclusion by citing various examples of how the Township has "vigorously" defended the zoning ordinances.  Appellees' Br. at 30.  Specifically, the Township strenuously—and successfully—contested the Wineries' motion for a preliminary injunction earlier in the litigation.  R. 24 (Township's Resp.) (Page ID #936–91); R. 32 (Mot. to File Sur-Reply) (Page ID #1615–33); R. 34 (01/15/21 Dist. Ct. Order) (Page ID #1864–77).  The Township cross-moved for summary judgment on the Wineries' state-law preemption claim, moved for summary judgment on all the other claims, and, after the district court enjoined parts of the zoning ordinances, sought a stay.  R. 63 (Township's Resp.) (Page ID #2739–72); R. 142 (Township's Br. Mot. for Summ. J.) (Page ID #4961–5004); R. 169 (Mot. for Stay) (Page ID #6218–42).  Finally, the Township has even incurred sanctions and attorney fees for backing out of a settlement agreement.  R. 127 (12/07/21 Dist. Ct. Order at 2) (Page ID #4390); R. 139 (01/05/22 Dist. Ct. Order at 9) (Page ID #4958).  What more, the Wineries seem to ask, could Protect the Peninsula do than what the Township has done?

The real focus of our analysis, however, is not on *what* the Township has done, but *why* it is doing it.  The adequacy of representation can change during a lawsuit depending on the representative party's underlying incentives for litigating the case.  *See Triax Co.*, 724 F.2d at

1228. For instance, other circuits have recognized that when the specter of monetary damages looms large, even stout resistance might wither over time. *See Fleming v. Citizens for Albemarle, Inc.*, 577 F.2d 236, 238–39 (4th Cir. 1978); *Planned Parenthood of Minn., Inc.*, 558 F.2d at 870.

And the possibility of damages looms large in this case. As an expert report filed by the Wineries has disclosed, the Township could face over $200 million in damages. R. 171-1 (Expert Rep. at 10) (Page ID #6371). That the Township has been zealously advocating for its position aligns *both* with the desire to defend the zoning ordinances, *and* with the motive of securing more favorable settlement terms later. What keeps the Township in the litigation today could change tomorrow, dampening the allure of continued legal battle along the way.

That possibility places this case at odds with the facts of the cases on which the Wineries rely to support their position, *United States v. Michigan* and *Jordan v. Michigan Conference of Teamsters Welfare Fund*. In *Michigan*, the United States sought a declaratory judgment against Michigan concerning the interpretation of a treaty regulating usufructuary rights of several American Indian tribes. 424 F.3d at 442. Both the proposed intervenors—a collection of landowners—and Michigan sought the same end in response, a declaration that these tribes lacked those rights. *Id.* at 444. Recognizing that this convergence boded ill for their motion to intervene, the proposed intervenors argued that "experience verifies that the state cannot adequately defend private property rights." *Id.* We were unconvinced, explaining that the proposed intervenors had failed to demonstrate that Michigan's incentive to litigate the case would flag over time. *See id*. Present here is what was absent in *Michigan*—the stick of damages and the carrot of settlement.

Next, it is true that in holding the representation in *Jordan* to be adequate, we stressed the vigor with which the party represented the proposed intervenor's interests there. *See* 207 F.3d at 863. We noted this zeal, however, only *after* concluding that the party's interests and the proposed intervenor's interests would not diverge. *Id.* Moreover, ensuring this alignment was straightforward because the proposed intervenor sought to collect from a settlement agreement the attorney fees that it had advanced to the plaintiffs to fund the lawsuit. *Id.* at 858. The plaintiffs, who were understandably eager to offload the cost, had already requested those fees

from the defendant as allowed by the agreement, *id.* at 857, so we concluded that the proposed intervenor would be able to collect those fees regardless of whether it intervened, *id.* at 858–62. Given that the Township has conceded that it may not be able to represent Protect the Peninsula's interests adequately, and that the Township is separately facing the prospect of damages, we are unable to ensure that such harmony will continue in the current dispute.

Without caselaw to support their position, the Wineries turn to policy. Both in their brief and at oral argument, the Wineries have feared that allowing Protect the Peninsula to intervene would necessitate allowing every landowner on Old Mission Peninsula to intervene and thus make the litigation unwieldy. Appellees' Br. at 20; Oral Arg. At 21:50–22:40. Unfortunately for the Wineries, the Supreme Court has recently considered and rejected a similar floodgate argument against intervention as of right. *See Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2205 (2022). As the Court explained, the adequate-representation inquiry could stem any wave of Rule 24(a) motions that does surface. *Id.* This is because as the number of intervenors increase, "it may be that the interests of existing parties will come to overlap fully with the interests of any remaining proposed intervenor." *Id.* Each intervenor who succeeds in intervening possibly alters the analysis under Rule 24(a) for each proposed intervenor that comes later, erecting new barriers to intervention in the process.

That insight forecloses the Wineries' argument. Once Protect the Peninsula is allowed to intervene, landowners on Old Mission Peninsula who still wish to intervene in the lawsuit will not be free to enter the fray uninhibited. Instead, they will either have to identify interests of their own that are different from those articulated by Protect the Peninsula's members or show some defect in Protect the Peninsula's representation of their shared interests. *See Jordan*, 207 F.3d at 863; *Triax Co.*, 724 F.2d at 1227–28. Should these imagined proposed intervenors be able to do so and satisfy the other requirements of Rule 24(a), then additional burdens on the district court will undoubtedly arise. But so long as these burdens fall "within the bounds of everyday case management," the Supreme Court has held that they do not alter the analysis under Rule 24(a). *Berger*, 142 S. Ct. at 2206.

In sum, overlapping interests do not equal convergent ones for the purposes of assessing representation under Rule 24(a). *See id.* at 2203–04. The Township faces the possibility of

damages.  Protect the Peninsula's members do not.  Protect the Peninsula's members own homes near the Wineries.  The Township does not.  It is not difficult to see how the two entities' interests could diverge.  There is certainly a "*potential*" for inadequate representation here. *Grutter*, 188 F.3d at 400.  Under these circumstances, and because all the other requirements of Rule 24(a) are met, intervention as of right is warranted.[4]

## III.  CONCLUSION

The district court's denial of Protect the Peninsula's motion to intervene as a matter of right is **REVERSED**, and the case is **REMANDED** for further proceedings in accord with this opinion.

---

[4]Because we hold that Protect the Peninsula may intervene, we do not reach the issue of whether the district court erred in denying the organization's motion to supplement its motion to intervene.  Instead, Protect the Peninsula is free to raise its argument regarding supplemental jurisdiction to the district court, which should decide it in the first instance.